**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 17-208-DLB

JONA KESSANS                                                           PLAINTIFF

vs.                     **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
**Commissioner of Social Security**                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **affirm** the Commissioner's decision, as it is supported by substantial evidence.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 11, 2013, Plaintiff Jona Kessans filed an application for disability insurance benefits ("DIB"), alleging disability beginning on October 5, 2010. (Tr. 316-17). Specifically, Plaintiff alleged that she was limited in her ability to work due the following: "Asperger's syndrome, ptsd-mst, orthopedic issues, etc."; "Asperger's Syndrome"; "PTSD - MST includes MDD and Anxiety"; Cervical and Thoracic Spine Injuries"; "Left Knee Injury"; "Asthma & Chronic Bronchitis"; and "Right Hip Injury." (Tr. 358).

Plaintiff's claims were denied initially and on reconsideration. (Tr. 111-14, 116-23). At Plaintiff's request, an administrative hearing was conducted on June 27, 2016, before Administrative Law Judge ("ALJ") Peter J. Boylan. (Tr. 39-79). On August 1, 2016,

1

ALJ Boylan ruled that Plaintiff was not entitled to benefits. (Tr. 12-38). This decision became the final decision of the Commissioner when the Appeals Council denied review on September 14, 2017. (Tr. 1-5).

On November 6, 2017, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 9 and 14).[1]

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether the decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).

---

[1] Plaintiff subsequently filed a Response in Opposition to the Commissioner's Motion for Summary Judgment. (Doc. # 15). The Court notes that this is not contemplated by the Eastern District of Kentucky's General Standing Order 13-7, which limits each party to one brief, and requires parties to show good cause in seeking permission to file additional briefs. Therefore, the Court has reserved its inquiry in this matter to the cross-motions for summary judgment. (Docs. # 9 and 14).

Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since from October 5, 2010 through her date last insured, December 31, 2015. (Tr. 17). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease, arthopathy, obesity, asthma, headaches, affective disorder, anxiety disorder, personality disorder, and Asperger's syndrome (20 CFR 404.1520(c))." *Id.* At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that "met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526." (Tr. 19)*.*

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), with the exertional and non-exertional limitations as follows:

> [S]he could never climb ladders, ropes, or scaffolds, and was limited to frequent balancing and stooping, and to occasional kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant was limited to occasional overhead reaching bilaterally. She had to avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and workplace hazards such as dangerous machinery and unprotected heights. The claimant was limited to simple routine tasks and was not able to perform at a production rate pace such as generally associated with jobs like assembly line work, but could perform goal oriented work such as generally associated with jobs like office cleaner. She was limited to simple work-related decisions and to occasional and superficial interaction with supervisors and coworkers. The claimant could have no interaction with the public as part of job duties. She was limited to tolerating occasional changes in routine work setting.

(Tr. 21-22). Based upon the RFC, the ALJ concluded that Plaintiff was not able to perform her past relevant work. (Tr. 27). Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27-28). The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from October 5, 2010, through her date last insured, December 31, 2015. (Tr. 28).

### C. Substantial evidence supports the ALJ's decision.

Plaintiff presents two issues on appeal, arguing that: (1) the ALJ ignored record evidence and failed to give Plaintiff's treating physician's opinion controlling weight; and (2) the ALJ ignored the "substantial evidence of record concerning Plaintiff's mental limitations, which support a finding of disability." (Doc. # 9-1 at 8 and 12). For the reasons below, the Court disagrees and finds that the ALJ's determination on each of these issues

4

is supported by substantial evidence.

### 1. The ALJ did not err in weighing the opinion of Doctor Kessans, a treating source.

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source is one that has not examined the claimant but has provided medical or other opinion evidence in the case. *Id.*

Generally, the ALJ must give "controlling weight" to the opinions of treating sources, so long as that source's opinion on the "nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

If the ALJ does not give the claimant's treating physician controlling weight for the reasons above, the ALJ must still consider the treating source's opinion and determine how much weight to give it, by considering a number of factors. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the length, frequency, nature, and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with

evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff's Motion for Summary Judgment assigns as error the weight the ALJ gave to the medical opinion of Plaintiff's treating physician, Doctor Julie Kepner. (Doc. # 9 at 8-12). Plaintiff argues that the ALJ erred in failing to give Doctor Kepner's opinions controlling weight in determining Plaintiff's RFC. *Id.* at 8-11. However, substantial evidence exists in the record to support the ALJ's decision.

In determining the Plaintiff's RFC, the ALJ analyzed the record, including medical and testimonial evidence. (Tr. 21-27). The ALJ considered Plaintiff's testimony at the hearing on this matter, opinions, reports, and the treatment notes from Doctor Aletha Tippett, M.D., Doctor Mary Buban, Psy.D., Doctor Julie Kepner, M.D., the physicians and psychologists reviewing Plaintiff's record on behalf of the Social Security Administration, Plaintiff's Veterans Administration ("VA") records, and third-party reports from Plaintiff's acquaintances. *Id.*

The ALJ declined to give Doctor Kepner's opinion controlling weight, finding that it was not well-supported by, and was inconsistent with, other substantial evidence in the record. The ALJ found that Doctor Kepner's opinion was inconsistent with "the opinion of the medical expert and references within [Doctor] Kepner's own treatment records," and Plaintiff's "established life activities during the time period under consideration." *Id.* at 25-26. Doctor Kepner's opinion and letters suggested that Plaintiff had "minimal ability to function outside her home," was "unable to meet competitive standards in many areas, including maintaining regular attendances" and "dealing with normal work stress" or "interacting appropriately with the general public." *Id.* at 24-25. However, the ALJ

6

determined that this was inconsistent with Plaintiff's engagement as a college student, Plaintiff's travel to New York for an Asperger's benefit, or Plaintiff's plan "to do independent research in South Korea on a full scholarship." *Id.* at 25. It was also inconsistent with a VA interview that found Plaintiff to be "generally functioning satisfactorily with normal and routine behavior, self-care, and conversation" and Doctor Kepner's treatment notes of Plaintiff, which describer Plaintiffs "mental status, memory, attention, and cognition" as "intact or normal." *Id.* Treatment notes from the middle of the time period at issue—October 2012—show Plaintiff reported that therapy program participation had helped her "process emotions, tolerate distress, and reduce the amount of reactionary behaviors," including learning to not be afraid of her feelings, and to express and feel them appropriately. *Id.* (quoting Tr. 3015). As a result, although he found that Doctor Kepner was a "treating medical source who ha[d] seen [Plaintiff] on a longitudinal basis," the ALJ did not give Doctor Kepner's opinion controlling weight. *Id.* at 25-26.

For a treating physician's opinion to be giving controlling weight, the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Gayheart* 710 F.3d at 376 (citing 20 C.F.R. § 404.1257(c)(2)). In addition, the opinion must not be "inconsistent with the other substantial evidence in [the] case record." *Id.* The two-prong test as laid out in subsection (c)(2), and enunciated in *Gayheart*, requires both prongs to be met for a treating source opinion to be given controlling weight. Because Doctor Kepner's opinion and letters are inconsistent with other substantial evidence in the record, and because her findings are not consistent with the record as a whole, the ALJ was not required to give her opinions controlling weight.

7

Plaintiff additionally argues that the ALJ erred in finding that Doctor Kepner did not perform a function-by-function analysis. (Doc. 9-1 at 11). However, Plaintiff's argument is both imprecise and overbroad; the ALJ found that Doctor Kepner's December 2015 letter did not contain a function-by-function analysis, and did not declare—as Plaintiff asserts—that Doctor Kepner had never undertaken such an analysis. (Tr. 24) (referring to Tr. 3604). However, Plaintiff is equally unable to show in the record where Doctor Kepner did undertake a function-by-function analysis. And Plaintiff's attempt to fashion such an analysis herself is unavailing; Plaintiff counsel's reorganization of some of Doctor Kepner's notes and a "mental impairment questionnaire" filled in by Doctor Kepner—to try to argue that Doctor Kepner undertook a formal function-by-function analysis—is not persuasive. (Tr. 9-1 at 11-12).

The ALJ explained that Doctor Kepner's opinion and findings were inconsistent with substantial evidence in the record. Thus, the ALJ determined Doctor Kepner's opinion did not merit controlling weight and detailed his "good reasons" for doing so in accordance with 20 C.F.R. § 404.1527(c). Accordingly, the Court finds no error in this portion of the ALJ's Step Four analysis.

### 2. *Substantial evidence supports the ALJ's decision.*

Focusing on one of the ALJ's hypotheticals to the vocational expert ("VE"), Plaintiff's next argues that the ALJ ignored substantial evidence in the record about Plaintiff's mental limitations. (Doc. # 9-1 at 12-15). Plaintiff complains that the ALJ posed three hypotheticals to the VE, but then relied on only the first two in making his decision. *Id.* at 13. As a result, Plaintiff argues, the ALJ erred in giving credibility to the third hypothetical by posing it, and then ignoring it in his final decision. *Id.* at 14-15.

Plaintiff is incorrect. It is well settled that the ALJ is not "required to rely on a VE's response based on limitations that [he] rejected." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 247 (6th Cir.1987)). Or, as one case cited by Plaintiff holds, "an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). As the ALJ considered the evidence presented by Plaintiff in determining Plaintiff's RFC, he rejected some of Plaintiff's claims of limitation. The ALJ was therefore free to pose a hypothetical to the VA based on the ALJ's RFC determination, and it was not error to set aside the VE's answer to a hypothetical that assumed facts the ALJ rejected.

"Substantial evidence review comes to this: Did the ALJ use 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'?" *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The ALJ's comprehensive analysis of the issues raised by Plaintiff "satisfies this modest standard." *Id.*

In the end, Plaintiff is asking this Court to ignore the evidence supporting the ALJ's decision, and focus instead on evidence that might support Plaintiff's position. However, this is tantamount to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by substantial evidence. *See Roberts v. Astrue,* No. 1:09-cv-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED;** and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 2nd day of August, 2018.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\Covington\17-208 Kessans MOO.docx